JOHN LENTZ V. FLINT & PERE MARQUETTE RAILWAY
COMPANY.

*Replevin of merchandise before delivery—Estoppel.*

1. A merchant supposing that an insolvent customer to whom he had forwarded goods had received and appropriated them, made an affidavit as a creditor under the assignment. But the goods had not been received. *Held*, that the affidavit did not estop him from replevying them from the carrier.

2. Title by sale never passes absolutely and for all purposes on delivery without payment, except in sales on credit.

3. One who makes a cash sale subject to acceptance can replevy the goods from a common carrier, or from any one, unless it be a bona fide purchaser, so long as the buyer has neither accepted nor paid for them, or received them, or had the right to compel delivery. And if payment was due at once the mere acquisition of possession by himself or his assignee could not cut off the vendor's right.

4. An assignee of an insolvent cannot claim anything to which his assignor had no right, and is not by virtue of the assignment, a bona fide purchaser of goods which the insolvent could not rightfully have claimed.

Error to Osceola. (Judkins, J.) Apr. 11.—Apr. 23.

REPLEVIN. Defendant brings error. Affirmed.

*Wm. S. Tennant* for appellant. Contracts intended to result in a sale are substantially contracts of sale: *Lee v. Griffin* 1 B. & S. 272; but see *Lamb v. Crafts* 12 Met. 356; *Mixer v. Howarth* 21 Pick. 205; *Goddard v. Binney* 115 Mass. 450; *Parsons v. Loucks* 48 N. Y. 17; *Brown v. Allen* 35 Ia. 306; *Partridge v. Wilsey* 8 Ia. 459; *Crockett v. Scribner* 64 Me. 447; *Abbott v. Gilchrist* 38 Me. 260; Benj. on Sales 126.

*Cooper & Winsor* for appellee.

CAMPBELL, J. Lentz replevied from the defendant (being a carrier in possession) two sets of log-wheels and accompanying apparatus, which he had sent previously from Cadillac to Reed City, directed to one Wing who had bargained

verbally to purchase them. This bargain was made at Cadillac in May, 1883, and its terms were that plaintiff should get ready immediately one set of wheels which were in condition to be tired and ship them, with the chains, which he had to purchase, and to send on the second set as soon as he could. The first set was sent about May 12th and the second June 2, 1883, forwarded by the Grand Rapids & Indiana Railroad to Reed City. The articles were to be paid for as soon as shipped. After arriving at Reed City they remained there, and were never delivered to Wing or called for by him, and he never communicated with Lentz. A clerk of his (who afterwards became his assignee), who testifies that he had charge of his correspondence, says that during Wing's absence he answered one of Lentz's letters of advice by promising that a draft should be sent immediately on Wing's return. He did not identify the particular time very clearly, but as far as he did it seems to have been the second shipment. Lentz denies receiving any letter except one on the second shipment, and no draft or payment was forwarded for either. Lentz says the purport of the letter was merely that the clerk would remind Wing. There was no testimony that this clerk, Dermont, had any authority beyond corresponding, and no pretense of payment in any shape.

On the 3d of July, Wing made a general assignment to Dermont. The only log-wheels which he described specifically were set out as being about his mill premises, and they are put in at a much lower value than those now in suit. Wing was at this time hopelessly insolvent, having debts exceeding $188,000, and assets less than $4000.

The assignee swears that about the end of July he went to Reed City and into the office of the Grand Rapids & Indiana Railroad, and told them they had two sets of wheels on which he wanted to pay freight, and paid them eight dollars which they said was the amount due, and took a receipt, which was not produced on the trial. This payment was actually only on one of the shipments not identified. He says that he had the wheels delivered to defendant for ship-

ment to Wingleton. They were not so forwarded, and Lentz found them on the third of August, replevied them, and paid the freight both for the original shipments and for the return.

On the trial the court below made the case to turn on whether the property had been accepted by Wing, and the jury found it had not. Some stress was laid by defendant's counsel (who represent the interest of the assignee, the defendant being indifferent) on an affidavit filed by Lentz as a creditor under the assignment. But this was claimed to have been made under the mistaken belief that the property had been appropriated by Wing, and it could not work an estoppel.

We think the charge was quite as favorable to defendant as could be justified. We have discovered no evidence which showed any acceptance at all, and there was never any delivery to Wing himself, nor any right in him to compel delivery when he made the assignment. The sale was a cash sale, and we do not think there is any testimony which would justify a conclusion that title was to pass before payment. Neither would he have been bound to accept the articles, which he had never seen, without an opportunity to inspect them. Wing never saw them, and never had any personal communication, either with Lentz or with the carrier. He did not own the property when he made the assignment, and Lentz never made any contract with the assignee. Assuming that the case lies outside of the statute of frauds, the assignee was not a bona fide purchaser, and could not claim them if Wing could not. Payment being due at once, the mere acquisition of possession could not be relied on by Wing, if he had obtained it, to cut off Lentz's rights. It is only in sales on credit that title passes absolutely and for all purposes on delivery without payment. 2 Kent's Com. 497, and cases.

While we are inclined to think that the sale was such as to be within the statute of frauds, so that there never was any binding contract whatever, yet this is not important on the present record, for it is very clear that without acceptance or payment by Wing, Lentz could not lose his right to resume

possession, as against any one but a bona fide purchaser. We need not consider how far such a person could maintain a right in articles not sold on credit and not paid for. *Shipman v. Graves* 41 Mich. 675.

The judgment must be affirmed.

The other Justices concurred.