EDWIN BYLES AND EDWIN J. PHELPS, ASSIGNEES OF
KELLOGG, SAWYER & COMPANY, v. SARAH
B KELLOGG.

*Assignment for benefit of creditors—Mortgage—Payment—Subroga-*
*tion—Covenant—Gift.*

The assignees of an insolvent debtor, on payment of a debt secured
by a mortgage on land conveyed by him prior to the assignment
*free* from said incumbrance, cannot take an assignment of the
mortgage and enforce it against the grantee, said payment hav-
ing extinguished the mortgage.

Appeal from Kalamazoo.   (Pealer, J., presiding.)   Argued
October 6, 1887.   Decided October 2й, 1887.

Bill filed by the assignees of an insolvent debtor to fore-
close a mortgage assigned to them by the mortgagee on pay-
ment of the mortgage debt, for which the debtor was person-
ally liable.

Complainants appeal.   Decree dismissing bill affirmed.
The facts are stated in the opinion.

*Edwards & Stewart,* for complainants.
*George M. Buck,* for defendant.

CAMPBELL, C. J.  Complainants, who, as assignees of Kel-
logg, Sawyer & Co., were also assignees of Joseph E. Kel-
logg, and Albert E. Sawyer, two of said firm, of their
separate property to pay their own and firm debts, filed
a bill to foreclose a mortgage on defendant's home property
acquired under the following circumstances:

In October, 1874, the property was owned by Kellogg &
Sawyer, and they mortgaged it to Mary A. Trowbridge for
$2,500.  ◦

In December, 1874, the property was conveyed to defendant, who is wife of Joseph E. Kellogg, as a gift from her husband, by deed executed by him and Sawyer. This deed, not having been placed on record, was subsequently taken by Kellogg, and lines of defacement drawn across it, and handed back to Sawyer, without Mrs. Kellogg's knowledge. This deed has figured in some other cases before us, and we have no doubt it had been legally delivered and was operative. It contains a covenant of seizin not subject to any exception, a covenant that the land was only incumbered by this mortgage, a general covenant of warranty against all lawful claims whatever, and a recital that this mortgage was held against the property.

In February, 1883, Kellogg & Sawyer made a quitclaim of the premises to Mrs. Kellogg, recited to be subject to this mortgage. During all this interval the premises, which are Mrs. Kellogg's homestead, and which all parties meant should be such, have been occupied and improved as such, and are valuable. The consideration expressed in the warranty deed is $8,000, which seems to have been about the unincumbered value of the land.

This property was not covered by the assignment, and we find no reason in the record why whatever title was meant to be conveyed to Mrs. Kellogg was not valid. And so far as Kellogg & Sawyer's own liabilities were concerned, their estates were perfectly solvent. And we have no doubt the deed of 1874 continued effectual, and needed no confirmation, and could not be changed by the quitclaim of 1883. The mortgage, as between Kellogg and his partner, Sawyer, had been assumed by Kellogg.

In September, 1886, Mrs. Trowbridge presented her claim for the mortgage debt against Kellogg's separate estate in the hands of the assignees, and, the matter being submitted to the circuit court of Kalamazoo county, it was determined that Mrs. Kellogg was not bound to pay the debt, and that

it continued a claim against Kellogg, and should be paid out of his assets. But the court not being prepared in that proceeding to settle all the questions that might arise, the assignees were directed, in paying Mrs. Trowbridge, to take an assignment of the mortgage, to abide future decision in a proper case; and it was in this way that they got possession of the claim in question.

As the assignees had no interest in the land under the assignment, they had no right to buy up a mortgage against it, unless in the single case that a secured creditor, who is put to his election between his debtor's assets and his specific security on particular assets, is sometimes required, on receiving payment out of the general assets, to turn over his security. But this is usually where the debtor himself would have had a right to the fruits of such an election had no assignment been made. And the doctrine can never apply to a case where the mortgaged property has been conveyed to a third party, in whose hands it is not, as far as the debtor is concerned, to be subject to payment of his debt.

Both the terms of the warranty deed and the facts appearing otherwise in the case indicate very clearly that Mrs. Kellogg was to take the property, so far as her husband was concerned, free of burden. Had Mr. Kellogg paid the mortgage himself, it is very clear that he could not have enforced it against his wife. If he could not, then there is no reason why his assignees can. If his estate was bound to pay this debt without recourse to the land, the assignees in paying the debt extinguished it, and made an end of it. The mortgage cannot survive the debt that it secured, where that debt has been paid to the holder of the mortgage by the debtor.

The court below took this view, and dismissed the bill, and the decree should be affirmed.

The other Justices concurred.