WISCONSIN MARINE & FIRE INSURANCE COMPANY BANK
v. THE MANISTEE SALT & LUMBER COM-
PANY ET AL.

*Assignment for benefit of creditors—Trust fund—Equity.*

1. The assignee, under our voluntary assignment law, gets no bet-
ter or greater title to the property coming into his hands by
virtue of the assignment than the assignor had before the
assignment was made; and a receiver has no better or greater
rights in the property than the assignee would have had if he
had qualified under the trust to him in the assignment. *Far-
rington v. Sexton*, 43 Mich. 454; *Lentz v. Railway Co.*, 53 Id.
444; *Byles v. Kellogg*, 67 Id. 318.

2. Where a corporation purchased land subject to the payment of
a mortgage, which payment was a condition precedent to the
vesting of title under said purchase, after which it conveyed
the land by warranty deed, subject to said mortgage, which
the grantee agreed to pay as a part of the purchase price, and
to that end gave a note to the grantor for the amount of the
mortgage debt, and received an agreement for its payment by
the grantor, which note was sold by the president of the
grantor and the proceeds used in the business, but the mort-
gage was not paid, after which the grantor made an assign-
ment for the benefit of its creditors, and on the failure of the
assignee to qualify a receiver was appointed, the proper equity
court will order the payment of said mortgage by the receiver
on the petition of the grantee, of whom such payment has
been demanded.

Appeal from Manistee.   (Judkins, J.)   Submitted on
briefs April 11, 1889.   Decided October 25, 1889.

Petitioner applied for an order that the receiver of The
Manistee Salt & Lumber Company pay to petitioner a
sum of money held as a trust fund, or that he pay a
mortgage and secure its discharge, and appeals from a
decree denying such relief.   Decree set aside, and one

entered granting relief prayed for.    The facts are stated in the opinion.

*Dovel, Smith & Smurthwaite,* for petitioner.

*Ramsdell & Benedict* and *Uhl & Crane,* for respondents.

[The points and authorities of counsel are stated and discussed in the opinion.—REPORTER.]

MORSE, J.    On February 29, 1888, the Manistee Salt & Lumber Company, a corporation organized and existing under the laws of this State, made a voluntary assignment, without preference, for the benefit of its creditors, naming E. Golden Filer as its assignee.    Filer neglected to file his bond within the statutory limit, and refused the trust.    The complainant filed its bill for the enforcement of the trust, and asked that a receiver be appointed. Other creditors joined in the prayer for the appointment of a receiver.    March 10, 1888, this prayer was granted by the circuit court for the county of Manistee, in chancery, and Otto Kitzinger, president of the defendant corporation, was appointed receiver, and soon thereafter entered upon the discharge of his duties as such receiver.

The petitioner, the Charles Reitz & Bros. Lumber & Salt Company, made application to said court for an order that said receiver pay over to it the sum of $10,000, held, as it claimed, by the Manistee Salt & Lumber Company as a trust fund, or that the said receiver be required to pay a mortgage of the same amount, held by John Canfield, and procure a discharge of the same.    The petition, on hearing, was denied.    The petitioner appeals to this Court.

The facts upon which the application was grounded are substantially these: October 10, 1887, the petitioner purchased of the Manistee Salt & Lumber Company a quantity of pine lands, the purchase price for the same being

$35,000. At the time of the purchase there was a mortgage for $10,000 upon the land, held by John Canfield. The Charles Reitz & Bros. Lumber & Salt Company paid at the time of the purchase the sum of $25,000 in cash and paper, and assumed the payment of this mortgage to Canfield, making in all the full consideration for the premises purchased. This mortgage was given by S. Babcock & Co., to secure their note to said Canfield. The Manistee Salt & Lumber Company purchased these lands of S. Babcock & Co. before its sale of the same to petitioner, and by a contract agreed to pay the mortgage to Canfield, and, in the event of its failure to pay the same, it was not to be entitled to a conveyance of the lands.

In the deed from the Manistee Salt & Lumber Company to the petitioner the said company warranted the lands to be free from all incumbrances whatever; that it was well seized in fee-simple of the premises; and that—

"It will, and its heirs, executors, successors, and assigns shall, warrant and defend the same against all lawful claims whatsoever, except a mortgage of ten thousand dollars to John Canfield, which is a part of the consideration herein named, and is assumed by said party of the second part."

But a further arrangement was made upon the same day of the making of this deed, October 10, 1887, by which the petitioner gave its note or acceptance for $10,000 to the Manistee Salt & Lumber Company, and received therefor the following receipt and agreement:

"MANISTEE, MICH., Oct. 10, 1887.
"Received of the Chas. Reitz & Bros. Lumber & Salt Company their note for ten thousand dollars, payable on or before June 1st after date, which is given to pay mortgage of John Canfield on land in Lake Co., this day sold to said company; and in consideration of said note we hereby agree to pay said mortgage, and to procure

the same to be discharged of record by the first of January, 1888.

> "THE MANISTEE SALT & LUMBER COMPANY,
> "M. Engleman, President."

Engleman, the principal man of the defendant corporation, died in January, 1888. The mortgage was not paid when he died, nor when the petition was filed, but payment had been demanded by Canfield of the petitioner, who, by the deed, was made responsible for its payment, and upon whose lands it was a lien. When the receiver, Otto Kitzinger, made his schedules of the assets and liabilities of the defendant corporation, he named this mortgage of Canfield as among the secured liabilities of the Manistee Salt & Lumber Company.

A. J. Dovel, upon the hearing, gave testimony in behalf of the petitioner to the effect that this note was put in the hands of the defendant corporation for a specific purpose, to wit, the payment and discharge of the Canfield mortgage. He testifies that the business relating to the purchase of these lands was carried on for the Manistee Salt & Lumber Company by Michael Engleman, who was then its president; that, after the deed was made, Engleman stated that he could procure a discharge of the mortgage; that he could get Canfield to discharge it. He said to Reitz—

"I'll tell you what to do, Charlie. You give me your paper, and I'll get John to take it and discharge that mortgage."

And thereupon the acceptance for $10,000 was made and delivered to Engleman, and the receipt executed by Engleman and handed to petitioner. Engleman, it appears, sold the acceptance to Canfield, and received the money upon it, which passed into the hands of the defendant corporation. The testimony of Dovel was objected to on two grounds:

1. That Engleman was dead, and his admissions could not be shown against the corporation of which he was president.

2. It tended to vary the written contract, and to change the contract relations which existed between the insolvent corporation and the petitioner.

There is no showing in the record that Mr. Dovel was a member of the Charles Reitz & Bros. Lumber & Salt Company, or sustained any relation which prevented his testimony from being received upon this point.

We do not think the second objection tenable, for the reason that it did not, in our view of the receipt or agreement, tend in any way to vary or contradict the effect of the writing, and for the further reason that the circumstances attending the giving of the note and receipt were admissible to show the whole transaction, inasmuch as only a part of it appeared from the written documents. The evidence did not alter, vary, or change the obligation of the defendant corporation as it appeared upon the face of the receipt or contract.

This note, by the terms of the writing, was to be used to pay the mortgage of Canfield and for no other purpose. The mortgage was to be paid and a discharge procured by Jan. 1, 1888. It is clear that this note was received by the Manistee Salt & Lumber Company in trust, and that it has violated its trust. But it is argued by the counsel for the defendant corporation that the proof is that the Manistee Salt & Lumber Company has not now the note in its possession; that it was discounted to Canfield, and the money received for it was passed over by Engleman to the defendant corporation, and expended in its business, and that none of the funds in the hands of the receiver have been shown to be the identical money, or any part thereof, received from the avails of this note; that, as against the other creditors of a bankrupt or insolvent, a trust creditor is not entitled

to a preference over such general creditors merely on the ground of the nature of his claim, that is, that he is a trust creditor as distinguished from a general creditor, unless he can identify the property or the avails of it, belonging to the trust, and lay his hand upon it; and that, as the petitioner has not pointed out a single article of property or a single dollar of money included in the assignment, which was either the original proceeds of the note or the product of it, it follows that it has no right to any part of the assigned estate, and is not entitled to have its claim paid as a preferred claim. The following cases are cited to support this contention: *Cavin v. Gleason,* 105 N. Y. 256 (11 N. E. Rep. 504); *Thompson's Appeal,* 22 Penn. St. 16; *In re Manufacturing Co.,* 12 N. B. Reg. 203; *In re Hosie,* 7 Id. 601; *In re Janeway,* 4 Id. 100.

The principle followed by these cases is stated by Nixon, J., *In re Janeway,*[1] as follows:

" Where the trust property does not remain *in specie,* but has been made way with by the trustee, the *cestui que trusts* have no longer any specific remedy against any part of his estate in bankruptcy or insolvency, but they must come in *pari passu* with the other creditors, and prove against the trustee's estate for the amount due them."

I do not think this principle is applicable to the present case. We have often held that the assignee, under our voluntary assignment law, gets no better or greater title to the property coming into his hands by virtue of the assignment than the assignor had before the assignment was made; and the receiver in this case has no better or greater rights in the property than the assignee would have had if he had qualified under the trust to him in the assignment. *Lentz v. Railway Co.,*

---

[1] This language is taken from Hill on Trustees.

53 Mich. 444 (19 N. W. Rep. 138); *Byles v. Kellogg*, 67 Id. 318 (34 N. W. Rep. 671); *Farrington v. Sexton*, 43 Id. 454 (5 N. W. Rep. 654).

When the note came due in this case, in the hands of a *bona fide* holder, the petitioner was obliged to pay and did pay it. If the mortgage is not paid by the receiver, the petitioner must pay it, it being a valid lien upon its lands. There is no doubt, had the defendant corporation remained solvent, and made no assignment, but that a court of equity, under the circumstances of this case, would have compelled it to pay and discharge the mortgage to Canfield, and thereby perform its trust, had it neglected or refused to do so. Is there any good and equitable reason why an assignment for the benefit of creditors should prevent the enforcement of this trust? I can see none. .

*In re Janeway*, *supra*, the money sought to be taken in full out of the bankrupt's estate was intrusted to the bankrupt to invest, and he failed to do it.

*In re Hosie*, *supra*, the money ($800) was delivered to the bankrupt to pay a certain note and mortgage owing by the petitioner to a third party, when it should be sent to him. The bankrupt credited the money on his books to the petitioner, and used it in his general business. The assignees showed 'that none of this identical money came into their hands. Nothing was said by the petitioner to Hosie, or between them, whether Hosie should receive the money as a special deposit, and hold the same as such while awaiting the arrival of the note and mortgage, and until paid over to the holder thereof, or whether the same should be placed to the credit of petitioner upon Hosie's books, and then be charged to the petitioner when the note and mortgage were paid.

*In re Manufacturing Co.*, *supra*, the bankrupt had sold

carriages on consignment for petitioners. There was no consigned property· in the hands of the assignee, nor any distinct fund which could be recognized or traced as the specific proceeds of the consigned property.

In *Thompson's Appeal, supra,* an executor had converted the assets of his testator into money, and used it in his business. Upon his assignment for the benefit of creditors the heirs of the testator claimed that the indebtedness to his estate should be first paid in full. It was held that, as it was impossible for the chancellor to lay his hand upon a single article of property, or a single dollar of money, included in the assignment ·as the property of the testator's estate or the product of it, the heirs must share *pro rata* with the other creditors. In *Cavin v. Gleason, supra,* $3,000 was placed in the hands of the assignor—

"To be invested by him, for their benefit, in a bond and mortgage to be given by J. B. Gould."

White, the assignor, used the entire fund, except $30, which came to the hands of the assignee, in paying his personal debts and liabilities. The court only permitted the $30 to be paid by the assignee in full.

It will be noticed that none of these cases rest upon the same ground as the one at bar, and none of them are in any wise similar except that of *In re Hosie.*

But that case lacks one element of this case. The petitioner here was fastened with the payment of the Canfield mortgage, and it was made a lien upon its lands by the act of the defendant corporation, and such corporation, upon the same day, took upon itself, for its own advantage, presumably, the trust of discharging such mortgage, and received the note for the purposes of such trust,—

"To pay mortgage of John Canfield on land in Lake

county, this day sold to said company" (Reitz & Bros.
Lumber & Salt Company).

And it must be remembered that under the contract
with S. Babcock & Co. the title of this land did not
pass to the Manistee Salt & Lumber Company until this
mortgage was paid, so that the title to this land, so far
as the record shows, was not assured in the petitioner
until the mortgage was paid.

To deny the equitable relief prayed, to wit, that the
receiver of the defendant corporation shall pay and pro-
cure the discharge of this mortgage or return to the
petitioner the proceeds of this note, with interest, which
will accomplish the same result, would be a denial of the
clearest equitable right, as well as of justice.    Suppose
this mortgage had been held by the Manistee Salt &
Lumber Company upon the lands of the petitioner, and
that company had received this note to pay the mortgage,
and promised to discharge it by January 1, 1888, would
not a court of equity have compelled. the receiver to dis-
charge the mortgage, whether or not the proceeds of the
note were in his hands?    The same principle ought to
govern in this case.    The defendant corporation put this
mortgage on the lands of the petitioner, in effect, and
the mortgage was paid when the note was passed to it.
Its duty now, in equity, is to discharge it.    The other
creditors have no more concern in this matter than they
would have had in the case supposed.    As well might
they come in, in that case, and say the note was not
applied on the mortgage,—it was used in the business,
and none of its proceeds are now on hand to pay the
mortgage,—as to step in here and make the plea that is
entered here, and which we have been considering.    In
both cases it was the duty of the company to pay the
mortgage with the note or its proceeds, and to procure
its discharge.    In both cases a court of equity would

have compelled the company, if no assignment had been made, to discharge it, and other creditors could not have intervened. The receiver must, in both cases, stand in the shoes of his assignor, and must move as the assignor would have been forced to move in case no assignment had ever been executed. See *People v. Bank*, 96 N. Y. 32; *Libby v. Hopkins*, 104 U. S. 303, 308; *Peak v. Ellicott*, 30 Kan. 156 (1 Pac. Rep. 499); *McLeod v. Evans*, 66 Wis. 401 (28 N. W. Rep. 173).

The record shows here, as in the latter case, that the money was used by the defendant company in its general business. "It was used either to pay its debts or increase its assets." In either case it went to the benefit of the insolvent's estate.

The order and decree of the court below must be set aside and vacated, and a decree will be entered here authorizing and directing the receiver to pay and procure a discharge of the said mortgage in accordance with the prayer of the petitioner. Costs of both courts will be allowed the petitioner, to be paid out of the estate of the insolvent corporation.

The other Justices concurred.