MICHIGAN TRUST CO. *v.* WEBBER.

1. VOLUNTARY ASSIGNMENTS—RIGHTS OF ASSIGNEE.

Prior to the enactment of 2 How. Stat. § 8741, the assignee of an insolvent debtor acquired only such interest in the assigned property as the debtor had to assign, but that section conferred upon the assignee the additional right to recover all property, or right or equities in property, which might be reached or recovered by any of the assignor's creditors.

2. SAME.

While it is true that courts have supervision of assignment proceedings, they cannot confer upon the assignee rights that the statute does not give him; and, giving to the statute of voluntary assignments the broadest construction of which it is capable, the assignee only stands in the place of his assignor and of the latter's creditors.

3. SAME—EQUITY—PARTIES.

The dissolution of a partnership will not be declared fraudulent and void in a suit by the assignee for creditors of a new firm organized by the continuing partner and another, where neither the creditors of the retiring partner nor those of the original firm are represented in the suit.

Appeal from Montcalm; Grove, J., presiding. Submitted January 31, 1896. Decided March 31, 1896.

Bill by the Michigan Trust Company, receiver of Clarence W. Chapin and Merrick W. Chapin, against Oscar Webber, George W. Webber, Andrew J. Webber, and Joseph T. Webber, impleaded with Clarence W. Chapin and Merrick W. Chapin, to set aside, as in fraud of creditors, the dissolution of a partnership between Oscar Webber and Clarence W. Chapin, to restrain Joseph T. Webber from disposing of certain property, and to obtain other equitable relief. From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*Thomas F. McGarry,* for complainant.

*William O. Webster* and *J. W. Champlin,* for defendants George W. Webber and Andrew J. Webber.

*W. W. Mitchel* and *George E. Nichols,* for defendant Joseph T. Webber.

MOORE, J.   The complainant filed a bill, alleging, in substance, that Oscar Webber and Clarence W. Chapin entered into a copartnership for the purpose of carrying on a private banking business at Stanton, Montcalm county, Mich., under the name of Webber & Chapin; that such business was carried on by them until December 28, 1892; that, at the time of the formation of such copartnership, Oscar Webber purchased an interest in said business from one Howe, who had previously invested in said enterprise $2,500; that Chapin entered into said business with $2,500, borrowed capital, not investing any money except the money thus borrowed; that at the time of the formation of said copartnership, as well as during its continuance, Webber alone was financially responsible, and was so considered by the patrons of their business; that Webber and Chapin drew from the business about $20,000 each; that about December 28, 1892, the firm of Webber & Chapin was insolvent, and known to be insolvent by the members of the firm; that Webber was in poor health, and had given but little attention to the management of the business; that he desired to nominally withdraw from the business, and place his individual property out of the reach of the creditors, and, at the same time, use and utilize the credit and property of the business as far as possible to effect the release of himself, individually, from the creditors who had trusted said firm; that Chapin was desirous of assisting Webber in said scheme; that on December 28, 1892, Webber and Chapin entered into an agreement for the ostensible purpose of dissolving said copartnership, but with the actual purpose of diverting their funds, so that Webber might place out of

reach of creditors his individual property, and Chapin could place out of reach of creditors the property which he then owned individually; that an alleged contract of dissolution was entered into between Webber and Chapin, wherein it was agreed that Webber should appear to retire from said firm, and Clarence W. Chapin should assume to pay him $6,000 for his interest, and carry on the business; that, in carrying on the business, the name of Merrick W. Chapin should be used; that Merrick W. Chapin was a brother of Clarence W. Chapin, who then was, and ever since has been, irresponsible; that said business should be carried on in the name of C. W. Chapin & Co., but that, as a matter of fact, Merrick W. Chapin's name was used to take the place and represent the interest of Oscar Webber in said business; that said dissolution was colorable, and not intended to otherwise operate in point of fact.

That, after such pretended dissolution, Clarence W. Chapin proceeded to carry on the business, formerly carried on in the name of Webber & Chapin, in the name of C. W. Chapin & Co.; that Oscar Webber, in furtherance of a scheme to cheat and defraud his creditors, on July 14, 1893, executed a mortgage to George W. and Andrew J. Webber on certain lands in the city of Ionia, purporting to secure payment of $14,500, according to the terms of a certain alleged promissory note, made on June 30, 1893, by Webber & Buck (viz., Joseph T. Webber and Thomas R. Buck, then copartners, doing business under the name of Webber & Buck) to said George W. and Andrew J. Webber, due six months from the date thereof, and indorsed by Oscar Webber, which mortgage was recorded July 14, 1893; that, at the time of the alleged dissolution of copartnership, Oscar Webber was not indebted to George W. and Andrew J. Webber; that, at the time of the alleged dissolution, said Oscar Webber was the owner of certain property, real estate and personalty, other than that above mentioned, situated in the city of Ionia; that the legal title to the last parcel appears to have been conveyed to Oscar Webber and wife, Augusta, and to remain

in them, and it is claimed that Oscar Webber occupied said parcel as a home, and has homestead rights therein; also 40 shares, of the face value of $100 each, of the capital stock of the First National Bank of Ionia; that the real estate and bank stock constituted, substantially, all the property, at the date of the alleged dissolution, of Oscar Webber, subject to levy and sale on execution; that Oscar Webber did not have on the date of the alleged dissolution, or at any time since, property liable to execution exceeding the sum of $1,000, made up of household furniture and other small items of property; that on or about January 10, 1893, Oscar Webber transferred to his son, Joseph T. Webber, 10 shares of his (Oscar Webber's) said stock in said First National Bank, without any consideration, and that on or about July 13, 1893, said Oscar Webber transferred the remaining 30 shares, which were then of the value of not less than $100 each, without any consideration whatever, except the pretended conveyance by Joseph T. Webber to Oscar Webber of a parcel of land on Bois Blanc Island, which was worth not to exceed the sum of $600; that the said conveyance was not the real consideration for the transfer of the bank stock, but was made to give some color to said transfer, which was really fraudulent, and solely for the purpose of placing said stock beyond the reach of the creditors of said Oscar Webber; that on July 14, 1893, although said note had been made only 14 days before, and would not be due until January 2, 1894, the said mortgage was given by Oscar Webber on all his real estate, nominally to secure said note, upon which he was liable, if at all, as surety as aforesaid, for Webber & Buck, upon his accommodation indorsement; that no effort was made by Webber Bros. to obtain security from Webber & Buck for the payment of said note, although they were abundantly able to give the same; that the mortgage was given solely in view of the failure and insolvency of said bank, and of the large indebtedness of Oscar Webber, and to cover up and incumber his real estate, and to defeat the creditors

of Oscar Webber, and to enable him to escape payment of his debts, and to defraud, hinder, and delay the creditors of Oscar Webber, represented by the complainant in this suit.

That meanwhile Clarence W. Chapin had placed in the hands of relatives, and out of the reach of execution, the most valuable part of his personal estate, and also a large portion of the funds of Webber & Chapin; that, in furtherance of such scheme, he deeded to his brother Julius W. Chapin a farm in Ingham county, consisting of 245 acres of valuable land; also took out of the bank, without payment, notes of his brothers, Merrick W. Chapin and Julius W. Chapin, aggregating between $7,000 and $10,000; and also took up and discharged, without any payment whatever, an indebtedness due from the firm of Chapin & Bennett, a firm consisting of himself (Clarence W. Chapin) and his brother-in-law, Frederick S. Bennett, to the bank, of about $15,000; and also, by the interposition of a third person, conveyed his interest in a farm in Montcalm county, of the value of $5,000 or $6,000, beyond the reach of creditors; that such transactions were a part of a general scheme to cheat and defraud the creditors of Webber & Chapin and of C. W. Chapin & Co.

That on July 26, 1893, in furtherance of said scheme to cheat and defraud, Clarence W. and Merrick W. Chapin, without the knowledge of said assignee as to said scheme, executed and delivered to complainant a common-law assignment, assuming to include and cover all the property of C. W. Chapin & Co., as well as the individual property of both Clarence W. Chapin and Merrick W. Chapin, for the benefit of creditors, in accordance with the laws of the State of Michigan; that complainant accepted said trust, executed the requisite bonds, and entered at once upon the discharge of its duties as assignee; that, after the acceptance of said trust, complainant proceeded to make an inventory and appraisement of the property claimed to be owned by C. W.

Chapin & Co., by C. W. Chapin individually, and by Merrick W. Chapin individually; that said property was duly appraised by two disinterested persons, as follows: That the goods, wares, merchandise, furniture, and fixtures, and all other chattel property, of every name and nature, belonging to said copartnership, and to the members of said firm individually, amounted to the sum of $2,315, and the bills receivable, promissory notes, and other credits, of every kind and character, belonging to said copartnership, or to the members thereof individually, as appraised by said appraisers, amounted to the sum of $20,489.63; that the real estate belonging to the said copartnership, and to the members thereof individually, over and above homestead rights, amounted to $4,495; and that Clarence W. and Merrick W. Chapin included within the said personal property all property that might be exempt to them under the statute, and demanded the value of the same when converted into money, in cash; that said assignors filed in the office of the clerk of the circuit court for the county of Montcalm, as provided by law, a list of their creditors; that the total indebtedness of C. W. Chapin & Co., which included the original indebtedness, then unpaid, by Webber & Chapin, amounted to the sum of $83,547.37; that the amount thereof originally due and owing, and then due and owing, by Oscar Webber and Clarence W. Chapin, amounted to the sum of about $28,000; that the remaining creditors, whose indebtedness aggregated more than $55,000, were creditors who had trusted the business carried on under the name of C. W. Chapin & Co., or were creditors who had accepted certificates of deposit from C. W. Chapin & Co., in lieu of original certificates of deposit issued by Webber & Chapin.

That, at the time of the alleged dissolution of the copartnership of Webber & Chapin, Webber had no individual creditors; that, at the time of the assignment, Webber was individually liable to the creditors of Webber & Chapin in the sum of $28,000, and upwards; that the property which

came into the hands of complainant will not pay 10 cents on the dollar of the indebtedness of C. W. Chapin & Co. over and above expenses; that said assignment, as a matter of fact, as well as a matter of law, transferred to complainant the legal title to the individual property of Oscar Webber, as well as the individual property of C. W. Chapin; that M. W. Chapin was a mere figurehead in the concern, representing Oscar Webber, and that the execution and delivery of said assignment by M. W. Chapin was in fact and in law the execution and delivery of Oscar Webber, and carried with it all the rights and powers, and had full legal effect, as though executed by Oscar Webber individually; that complainant, as such assignee, is entitled to have and receive the individual property of Oscar Webber, and convert the same into money, and to distribute the same under the order of the court; that complainant is also entitled to all other property possessed by Oscar Webber at the date of said assignment, and that Webber should be compelled to file a schedule of the same in the matter of such assignment, and that, if necessary for such purpose, the court should appoint complainant, or some other person, receiver of the individual property of Oscar Webber, for the purpose of carrying into effect the trust created by said assignment, and for the purpose of marshaling and distributing the assets of said estate.

That, prior to the alleged dissolution of the copartnership of Webber & Chapin, Joseph T. Webber and Thomas R. Buck were engaged in the clothing business at Ionia, under the name of Webber & Buck; that, in order to carry on such business, they claim to have borrowed large sums of money from Webber Bros., a banking firm doing business at Ionia, composed of George W. and Andrew J. Webber, brothers of Oscar Webber; that Joseph T. Webber is the son of Oscar Webber, and a nephew of the Webber Bros.; that it is claimed by Webber & Buck that they borrowed from Webber Bros. $14,500; that, after the alleged dissolution of Webber & Chapin, Oscar Webber executed

a mortgage on his individual property for the purpose of securing Webber Bros. upon the indebtedness so claimed to be due from Webber & Buck; that the giving of the mortgage by Oscar Webber to Webber Bros. was done for the purpose of covering up the property of Oscar Webber, in order to hinder, delay, and defraud the creditors of Webber & Chapin from the collection of their debts from the property covered thereby; that the giving of the mortgage was a fraud upon the creditors of Webber & Chapin, for the payment of whose debts Oscar Webber was still liable, and that the mortgage is null and void as against complainant in behalf of such creditors, and voidable at the instance of complainant in behalf of such creditors; that, if Oscar Webber was liable in any sum on said note, his liability is not greater than that of surety for Webber & Buck, and that the dealings of Webber Bros. with the principals, Webber & Buck, since the making or the maturity of said note, and the extension of time granted by Webber Bros. to Webber & Buck, and the failure and delay of Webber Bros. to obtain or compel the securing or payment of said debt by the principals, Webber & Buck, operated as a discharge and release of the said Oscar Webber from all liability upon said note and the lien of said mortgage; that the conduct of Webber Bros. operated, if not to release Oscar Webber and the lien of said mortgage, at least as a waiver by them of all right to priority under said mortgage as against the complainant, the representative of the creditors; that, even if said mortgage be valid, Webber & Buck should pay the indebtedness due to Webber Bros., thus paying the indebtedness to secure which said mortgage was given, and relieving said property from the operation of said mortgage, that it may be reached and used for the creditors of Webber & Chapin, for the payment of whose claims Oscar Webber is still liable; that March 10, 1894, Webber & Buck dissolved partnership, Webber assuming and agreeing to pay the indebtedness due to Webber Bros. of $14,500, to secure which the mortgage

was so given by his father, Oscar Webber; that Joseph
T. Webber is able to pay said indebtedness; and that,
after paying all his other creditors, he will have sufficient
other property to pay this mortgage, thus relieving the
property of Oscar Webber from the lien of said mortgage;
but that the property of Joseph T. Webber is nearly all
personal property, and subject to changes and fluctuations
in value; that the stock of goods which came into the
hands of Joseph T. Webber upon the dissolution of Web-
ber & Buck is worth more than $14,500.

That, by virtue of the assignment of Chapin & Co., com-
plainant became vested with the title to the bank building
occupied by Webber & Chapin and by Chapin & Co.,
and all the fixtures thereunto belonging.

Complainant asked for an injunction restraining Joseph
T. Webber from selling, other then by retail, the stock of
goods owned by him; for a receiver of the property of
Joseph T. Webber, with the usual powers, or that, in
lieu of said injunction and receiver, Webber execute a
bond, approved by the register of the circuit court, to
stand in lieu of his (Joseph T. Webber's) property, pend-
ing the litigation; that the alleged dissolution of the
copartnership between Webber & Chapin be set aside,
and the assignment by Chapin & Co. be declared an
assignment by Oscar Webber as well; that the dissolution
of Webber & Chapin be declared fraudulent and void,
and the formation of the partnership between Clarence
W. and Merrick W. Chapin, and the assignment by them,
be declared to include the individual property of Oscar
Webber; that the said Oscar Webber be directed to file
an inventory of his individual property and a list of his
creditors, or that, in lieu thereof, the complainant or some
suitable person be appointed receiver of the individual
property of said Oscar Webber, with the usual powers,
and with special authority to sell such property, and con-
vert it into money, and to distribute the same under the
order of the court; that the complainant may be decreed
to be the owner of the bank building in which C. W.

Chapin & Co. conducted their banking business; and with a general prayer for relief.

George W. and Andrew J. Webber appeared by solicitors, and demurred to the bill. Joseph T. Webber appeared by another solicitor, as did also Oscar Webber, and each demurred to the bill. The demurrers were sustained, and the case is brought here by complainant for review.

The complainant gets such standing in court as it has by virtue of a voluntary assignment made by Chapin & Co., in July, 1893. Prior to the enactment of section 8741, 2 How. Stat., the assignee would get only such interest as the assignor had to assign. The enactment of the statute last mentioned, in addition to the rights of the assignor, conveyed to the assignee "the right to recover all property, or right or equities in property, which might be reached or recovered by any of the creditors of such assignor." It is urged that section 8749, 3 How. Stat., gives the court supervisory control over assignment proceedings, and that the court could aid the assignee in reaching the property for the benefit of the creditors of Webber & Chapin. It is true that courts have supervision of assignment proceedings, but courts cannot confer rights upon statutory assignees that the statute has not given them. Giving to the statute of voluntary assignments the broadest construction of which it is capable, the assignee stands in the place of his assignors and the creditors of his assignors. *Wisconsin Marine & Fire Ins. Co. Bank* v. *Manistee Salt & Lumber Co.*, 77 Mich. 76; *Lentz* v. *Railway Co.*, 53 Mich. 444; *Dwight* v. *Lumber Co.*, 67 Mich. 512. There is nothing in the bill to show that the complainant represents any one but its assignors, Chapin & Co., and their creditors. So far as the case presented in the bill of complaint is stated, the creditors of Webber & Chapin are not before the court in this proceeding, and they would not be bound by any decree that might be rendered herein. There is nothing in the bill to show that the creditors of Webber

& Chapin assent to or recognize the validity of the assignment made by Chapin & Co. to complainant. Indeed, this court will take notice that cases are now pending in this court where the creditors of Webber & Chapin are seeking to reach the interests in property that belonged to Webber & Chapin or Oscar Webber, to satisfy debts held by creditors of Webber & Chapin, some of which is the same property the title to which complainant seeks to have this court hold to be in it. If fraudulent conveyances have been made by Oscar Webber of the partnership property of Webber & Chapin, or of his individual property, and if Joseph T. Webber and the firm of Webber Bros. are acting in collusion with him in attempting to make such conveyances, the creditors of Oscar Webber and the creditors of Webber & Chapin are interested in having such conveyances set aside. The complainant, by the case stated in its bill, has not shown that it is authorized to appear for either the creditors of Oscar Webber or the creditors of Webber & Chapin; nor are they made parties defendant. As these creditors are unrepresented in this proceeding, and there is no privity shown by the bill between Chapin & Co. or their creditors and Webber Bros. or Joseph T. Webber or Webber & Buck, it is difficult to see upon what theory the bill can be sustained. The assignee has already collected the assets of Chapin & Co. for the benefit of the creditors of that firm.

It is not necessary to discuss the other propositions so ably argued by counsel in their briefs.

The demurrers are sustained, with costs.

LONG, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.