PIASECKI *v.* FIDELITY CORPORATION OF MICHIGAN.

1. CHATTEL MORTGAGES—ASSIGNMENT—CONSERVATION OF ASSETS.
   The assumption by defendant assignee of chattel mortgage, on which payment was guaranteed by the assignor, of the duty to conserve the asset was left open and undisposed of so far as its express wording is concerned, where it merely authorized the assignee "to do every act and thing necessary to collect and discharge the same."

2. SAME—ASSIGNMENT—GUARANTY OF PAYMENT—PAROL EVIDENCE.
   The duty of the assignee of a chattel mortgage, on which payment was guaranteed by the assignor, to conserve the asset over which the assignee then had control is a matter to be expected and may be proved by parol evidence relating to the acts of the parties or impliedly made at the time of the assignment, even though the assignment does not expressly require but merely authorizes the assignee to conserve the asset, at least where such parol evidence is not contradictory of the express written terms of the assignment.

3. SAME—ASSIGNMENT—PAROL EVIDENCE—FILING—DELAY—LOSS.
   It was competent for assignor of chattel mortgage to show by implication from circumstances and acts of the parties the understanding relied upon by the assignor as a practical interpretation of the papers signed, especially where the result of the action taken was to preclude the assignor from filing the chattel mortgage and make it easy for the assignee to do so, where the basis of plaintiff assignor's claim was that defendant's delay in filing it caused loss by reason of extension of credit by others in the interval of delay.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–6, 9] 24 Am Jur, Guaranty §§ 58, 124.
　Generally as to effect of an assignment of a chattel mortgage, see 10 Am Jur, Chattel Mortgages § 189.
　As to liability of a guarantor of a negotiable instrument, see 8 Am Jur, Bills and Notes § 636; 21 ALR 1375; 33 ALR 97; 46 ALR 1516.
[7, 8] 12 Am Jur, Contracts §§ 227, 234, 247.
[8] 20 Am Jur, Evidence §§ 1102, 1142 *et seq.*

4. SAME—PRINCIPAL AND AGENT—RATIFICATION—EVIDENCE.

> Course of dealing between the parties relative to previous assignments of other chattel mortgages without any indication that any of such transactions had been repudiated and fact that defendant had sued plaintiffs for balance due on chattel mortgage which plaintiffs had assigned to it constituted evidence that it at least ratified the acts of its agent in the transaction and that such acts were binding on defendant.

5. SAME—PRINCIPAL AND AGENT—RATIFICATION—EVIDENCE.

> A jury would be justified in finding that defendant's agent had authority to do what the record shows he did to bind the defendant to perform its duty in conserving the chattel mortgage assigned to it by plaintiffs who also guaranteed its payment, where it appears there had been previous like transactions handled similarly, that defendant had sued plaintiffs for balance due and later joined plaintiffs in petition filed in chattel mortgagor's bankruptcy proceeding.

6. SAME—CONSTRUCTION OF ASSIGNMENT—FILING.

> Assignment of chattel mortgage conferring upon assignee authority to collect and discharge the mortgage is construed as imposing upon the assignee the duty of conserving the asset by filing it promptly in view of the previously established mode of procedure in similar transactions between the parties, the assignee's taking of all 3 copies of the mortgage making it easy for the assignee and difficult, if not impossible, for the assignor, to file the mortgage and defendant's belated act in filing the chattel mortgage after it had become worthless.

7. CONTRACTS—CONSTRUCTION—EXECUTION.

> A contract should always be so construed as to carry into effect the intention of the parties, which must be ascertained from the language of the instrument, and the facts and circumstances attending its execution.

8. SAME—AMBIGUITY—PAROL EVIDENCE.

> Parol evidence is competent to show the relations of parties and attending circumstances as an aid in interpreting, or construing, a written instrument which is uncertain and ambiguous.

9. GUARANTY—PAYEE'S WANT OF DILIGENCE—RELEASE.

> Want of due diligence by the payee of an obligation, which operates to the injury of the guarantor of the obligation and occasions him loss which he could otherwise have avoided, operates to release the guarantor.

Appeal from Muskegon; Fox (Raymond W.), J., presiding. Submitted January 7, 1954. (Docket No. 32, Calendar No. 46,020.) Decided April 5, 1954.

Case by Sidney J. Piasecki and Darwin Andree, copartners doing business as Modern Fixture Company, against Fidelity Corporation of Michigan, a corporation, for damages arising from failure to record chattel mortgage promptly. Dismissed. Plaintiffs appeal. Reversed and remanded for trial.

*R. Burr Cochran,* for plaintiffs.

*Mitts, Smith & Haughey,* for defendant.

REID, J. Plaintiffs in this jury case seek to recover damages arising from deterioration in value of a chattel mortgage assigned with guaranty by plaintiffs to defendant, occasioned by defendant's failure to carry out its duty to plaintiffs to file the chattel mortgage with the register of deeds for Muskegon county promptly and seasonably, by which failure interim creditors of the later bankrupt chattel mortgagor were allowed to advance credit, in ignorance of the existence of the chattel mortgage.

Plaintiffs claim that at the time the chattel mortgage was assigned to defendant with a guaranty as a part of the assignment, there was contemporaneously a duty by inference between the parties (Lee Spradling acting as defendant's agent) that defendant should file the chattel mortgage with the register of deeds. Defendant claims that plaintiffs did not show the authority of Spradling as its agent to bind them by any agreement contrary to the express terms of the assignment and guaranty. Defendant further claims that the assignment and guaranty contain the entire agreement of the parties and be-

ing in writing, it is exclusive of any oral agreement and that the terms of the written agreement cannot be varied by a contemporaneous verbal agreement.

The court upon the completion of the opening statement of plaintiffs' counsel, having taken under advisement the motion of defendant to dismiss and having proceeded with the taking of testimony, must be considered to have had in mind the testimony that had thus been taken as though amplifying and supplying details of the statement of the claim of plaintiffs. Part of plaintiffs' opening statement was that the written assignment of the chattel mortgage and warranty showed on its face an undertaking by defendant "to do every act and thing necessary to collect and discharge the same." Plaintiffs' claim in that regard was found by the trial court incorrect as a matter of law. There was nothing in the assignment by which the defendant expressly agreed "to do every act and thing necessary to collect and discharge the same," but expressly, defendant was by the writing *authorized* "to do every act and thing necessary to collect and discharge the same." The assumption by defendant of the duty to conserve the asset was thus left open and undisposed of so far as concerns the express wording of the assignment. However, plaintiff in his opening statement relied not solely on his construction of the express terms of the assignment and guaranty, but in addition thereto, stated to the court that the duty of defendant to record the chattel mortgage should be implied by law *"and under the circumstances."* The declaration alleged in paragraph 4 that by the terms of said assignment and *"contemporaneously therewith,"* the defendant *promised* plaintiff to do every act and thing necessary to collect said obligation, which included the immediate filing of said mortgage with the register of deeds.

During the taking of testimony, the nature of the circumstances thus relied on contemporaneous with the execution of the assignment was set forth in the testimony of Mr. Andree, one of plaintiffs, as follows:

"Our method of dealing with the Fidelity Corporation whenever we had any contract discounted with them was for Mr. Lee Spradling to contact me, or I would contact him, and we were handed these forms and told how to fill them out, and each time he was very persistent that we have these things ready so that he could pick them up and file them himself. He had filed every one, previously, at the court house. I have never filed one of these chattel mortgages here at the court house for Fidelity. They always took care of that. By filing I mean with the register of deeds office. These chattel mortgages are supposed to be kept on record at the court house. Mr. Spradling has done all the filing.

"*Q.* [by Mr. Cochran, attorney for plaintiffs] At the time you received this check for $1,200, did you have any instrument left with you by Mr. Spradling?

"*A.* Nothing whatsoever. He took all 3. These are made in 3 copies and he took all 3 copies with him. We were never left a copy.

"*Q.* On any other occasion had he ever left a copy with you?

"*A.* None at all. We were never left a copy of these. The closest that I ever came to accompanying Mr. Spradling on any occasion was one that we made up with Mr. Roscoe Hobson and we left Mr. Hobson and we double parked out here on Pine street and we double parked and I remained in the car and he ran in the courthouse. I stayed out in Mr. Spradling's car and he run in and filed it. He done all the filing.

"*Q.* Did you have any conversation with Mr. Spradling on the matter of this Tessler assignment —about recording—at all?

"*A.* No. He always said they should be prompt and he took care of that. There was never any discussion of any kind that I was supposed to record them—he always—in fact, this thing was sort of new to us. We'd only had, I think it was a total of 6 or 7 deals with Fidelity and he helped me a lot with them. He would usually go through the account with me and we would fill it out there and he would take them with him and at the time he did, he wrote the checks himself. He carried a checkbook right in his pocket and he would write out the check and leave it with us and take the instruments all with him. The only thing that was left with us was the check.

"*Q.* Can we agree that June 13, 1951, was on a Wednesday?

"*Mr. Smith* [attorney for defendant]: Yes.

"*Mr. Cochran:* This is marked plaintiff's exhibit 4, for identification, and counsel and I agree that it is a receipt delivered to the Fidelity Corporation for recording this instrument, file number 117641 stamped, and the recording date stamped on here is June 18, 1951, and it discloses the instrument to be the mortgage of Jack S. Tessler, under date of June 13, 1951."

The assignment and guaranty are as follows:

"The undersigned, for value received, does hereby sell, assign and transfer to FIDELITY CORPORATION of Michigan, all rights, title and interest in and to the within mortgage, and the property covered thereby and authorizes said FIDELITY CORPORATION of Michigan to do every act and thing necessary to collect and discharge the same, and does hereby guarantee the payment of the note and mortgage hereby assigned.

"If the within mortgage or note, are in any way misrepresented by the undersigned or any of his agents, and the note has been indorsed without recourse, the undersigned hereby agrees to reimburse

the Fidelity Corporation of Michigan for any loss it may have on account of nonpayment of said note.

"In Witness Whereof, said undersigned has hereunto subscribed his, its or their name this 13th day of June, 1951.

> "Darwin R. Andree    (L.S.)
>   "Dealer's Signature
> "By Partner
>   "Official Title."

The answer by the trustee in bankruptcy of Jack S. Tessler's assets recites:

"Because said mortgage was made on June 13, 1951, but was not filed in the office of the register of deeds for Muskegon county, Michigan, until June 18, 1951, and during the interval certain creditors extended credit to the bankrupt, among said creditors being Caughey Schuler Insurance Agency (June 14), Dana Printing Company (June 15) Grossman's Department Store (June 16)."

The resultant ruling of the referee in bankruptcy concludes as follows:

"It is ordered that the Modern Fixture Company and the Fidelity Corporation of Michigan's petition be denied."

Defendant is incorrect in claiming that the circumstances surrounding the making and delivery of the assignment could not be shown by parol. The duty of the assignee to conserve the asset, is a matter to be expected and is by weight of authority assumed from the relationship of the parties and control of the asset by the assignee; it may be proven in conjunction with the assignment by parol evidence relating to the acts of the parties, or impliedly made at the time of the assignment, at least when not contradictory of express written terms of the assignment. See *Hopkins* v. *Sanford,* 41 Mich 243; *Lamb* v. *Story,* 45 Mich 488; *Wisconsin Marine & Fire In-*

*surance Company Bank* v. *Manistee Salt & Lumber Co.,* 77 Mich 76, 80; *Peabody* v. *Bement,* 79 Mich 47.

It was competent for plaintiffs to show by implication from circumstances and acts of the parties the understanding relied on by plaintiffs herein as a practical interpretation of the papers signed. The result of Spradling's action was to preclude plaintiffs from filing the chattel mortgage, but made it very easy for defendant to file it, and defendant actually did file it on June 18th, but too late to prevent loss to plaintiffs.

Defendant claims there was no showing of the authority of Spradling as agent to bind defendant by his acts in question. However, the testimony of Andree, above recited, indicates a course of dealing with the defendant through Spradling as representing the defendant without any indication that any of 6 or 7 transactions had ever been repudiated by the defendant; the transactions called for the advancement of sums of money evidently by the defendant; but in addition the record shows that defendant has sued plaintiffs for the balance unpaid on the transaction in question, which suit could be considered as a ratification at least, of the agency of Spradling, if not evidence that such agency had existed before the transaction in question. Further, defendant joined with plaintiffs in a petition in the bankruptcy proceeding to repossess the property covered by the chattel mortgage. If permitted to decide the case, the jury could have found the authority of Spradling as agent of defendant to do what the record shows he did.

If the jury so found and further found that Spradling, being the agent of defendant, knew and realized or should have known or realized at the time he took all 3 copies of the chattel mortgage, leaving Andree no copy at all, that Andree, acting for himself and his coplaintiff, from such act of Spradling, would

understand because of the nature of the previous loans and circumstances surrounding such loans and surrounding the instant transaction, that Spradling for defendant was undertaking the duty of filing the chattel mortgage with the register of deeds and that Andree was relying upon Spradling's so filing, and if the jury had received the case and had found that Andree did so understand the situation, then the jury in view of the duty implied by terms of the warranty and from such acts of defendant, would have been justified in finding that there were in fact validly proven grounds for the implication of assumption by defendant of the duty to file the chattel mortgage. In that case the failure of Spradling seasonably and promptly to file such chattel mortgage and assignment thereof would cause defendant to be liable to plaintiffs for damages caused by the deterioration in value of the assigned chattel mortgage resulting from such failure so to file the instrument.

The assignment and guaranty on a printed form prepared by defendant does not expressly forbid, but on the contrary paves the way for, the construction in the light of the circumstances and the acts of the parties as shown by testimony, that it was the intention of the parties that defendant should with reasonable promptitude file the chattel mortgage with the register of deeds, because of

(a) The previously established mode of procedure in case of loans obtained from defendant by plaintiffs;

(b) The act of defendant immediately following the signing of the assignment in taking all 3 copies and not leaving in the hands of plaintiffs the chattel mortgage nor any method of filing the chattel mortgage;

(c) Defendant's act of filing the chattel mortgage on June 18, 1951, though so belatedly that the chattel mortgage had in the meantime become worthless.

"A contract should always be so construed as to carry into effect the intention of the parties, which must be ascertained from the language of the instrument, and the facts and circumstances attending its execution." *Mathews* v. *Phelps,* 61 Mich 327 (syllabus 3) (1 Am St Rep 581).

Evidence (by parol testimony) is competent to show the relations of parties and attending circumstances as an aid in interpreting, or construing, a written instrument which is uncertain and ambiguous. See *In re Kelley's Estate,* 173 Mich 492 (Ann Cas 1914D, 848) at page 499, and authorities there cited.

Two decisions of this Court have determined the principal dispute between the parties as to the law governing the duty of a guarantee. In *Re Kelley's Estate, supra,* at page 502, we say:

"While the guarantor of *payment,* not a party to the original note, cannot complain of laches, or want of notice, unless it has worked to his prejudice, on the other hand want of due diligence by the payee, which operates to the injury of the guarantor and occasions him loss which he could otherwise have avoided, operates as a release.

"While this rule is enforced on less provocation in cases of a guaranty of collection than a guaranty of payment, it is equally applicable to the latter. It has been held that the guarantor is released if the payee fails to make demand, give notice of default, or to take any proceedings to collect for a period of 5 years. *Shepard* v. *Phears,* 35 Tex 763." (Italics supplied.)

This was quoted with approval in the minority opinion in *Palmer* v. *Schrage,* 258 Mich 560, a case of guaranty of payment, at page 564; and the same

principle was also approved in the majority opinion in the Palmer Case at page 569, where it was stated:

"It may be conceded  *  *  *  that defendants were guarantors, that within a reasonable time after default defendants were entitled to notice thereof, and if such notice was not given, and defendants in consequence thereof were damaged, they would be released *pro tanto* from their guaranty."

The majority opinion found differently from the minority opinion only on the ground that defendants in the *Palmer Case* sustained no damage (page 571), a difference as to facts, not as to law.

The *Palmer Case* and the *Kelley's Estate Case* both established the principle sustaining the claim of plaintiffs in the instant case, that it was the duty of the guarantee in possession of the asset, to conserve the asset, though the guaranty be of payment. The weight of authorities is to the same effect. The duty to conserve was not expressly embodied in the writing in either the *Kelley's Estate Case* or in the *Palmer Case,* but was implied in each case. We are not here confronted with any claim that it was the duty of the guarantee (the defendant here) of *payment,* to take any steps to enforce *collection* from the mortgagor.

The trial court was in error in holding that there was no proper proof of defendant's duty to conserve the asset by filing the chattel mortgage and in entering judgment for defendant with prejudice. The judgment is reversed. The case is remanded to the trial court with instructions to set aside the judgment, and to grant and proceed with a new trial. Costs to plaintiffs.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Dethmers, and Kelly, JJ., concurred.