**FIRST NATIONAL BANK IN GRAND FORKS, a corporation, Plaintiff and Appellee,**

v.

**HAUGEN FORD, INC., a corporation, Defendant and Appellant.**

**Civ. No. 8998.**

Supreme Court of North Dakota.

June 26, 1974.

Grindeland & Peterson, Mayville, for defendant and appellant.

Shaft, Shaft, McConn & Fisher, Grand Forks, for plaintiff and appellee.

PAULSON, Judge.

This is an appeal by the defendant Haugen Ford, Incorporated from the judgment of the Grand Forks County District Court, the Honorable A. C. Bakken presiding without a jury, which judgment awarded damages to the plaintiff First National Bank in Grand Forks [hereinafter "the Bank"] in a contract action and which dismissed Haugen Ford's counterclaim.

On August 14, 1967, Haugen Ford sold an automobile to Ordell R. Pederson, a Minnesota resident, pursuant to a retail installment contract [hereinafter the "Pederson contract"] for a time price of $4,524.-84. The Pederson contract was immediately assigned by Haugen Ford, with recourse, to the Bank. The Pederson contract is composed of four copies: a white "bank" copy, a canary "buyer's" copy, a pink "dealer's" copy, and a blue "filing" copy. The bank copy and the filing copy were forwarded to the Bank. On the reverse side of the Pederson contract, in addition to a statement of the terms and conditions of the contract, are two alternative forms of assignment. The first, which is entitled "Assignment and Guaranty by Seller", and which was executed by Haugen Ford on August 14, 1967, provides:

"FOR VALUE RECEIVED the undersigned sells, assigns and delivers to First National Bank, Grand Forks, N. Dak. Assignee, the within contract and the undersigned's title to the Property therein described, and guarantees payment to Assignee of all sums due and to become due thereunder and full performance of all terms of said contract. If the Property shall have been repossessed and the undersigned fails to pay the required sum on demand, Assignee may sell the Property for the account of undersigned

at public or private sale, with or without notice, and apply the proceeds, first, to the expenses of retaking, storing, repairing and selling the Property, second, to the satisfaction of the liability of the undersigned hereunder, and undersigned agrees, upon demand to pay any deficiency. If this guaranty be placed with an attorney for collection, undersigned agrees to pay reasonable attorney's fees. No extension, waiver, modification or settlement of any obligation of Buyer, or repossession of the Property, shall affect undersigned's liability hereunder and undersigned waives notice of acceptance of this guaranty, notice of non-payment and of non-performance and prior legal proceedings against Buyer.

"Haugen Ford, Inc.
"By [signed] E. A. Haugen
"Its Pres.
"Dated: 14 August, 1967 "

The second form of assignment is entitled "Assignment and Agreement by Seller", and it provides, in pertinent part, that "said contract has been duly filed in the manner provided by law." This form of assignment was not executed by the parties. No financing statement was ever filed by the Bank or by Haugen Ford to perfect the security interest in the automobile which was the subject of the Pederson contract.

On November 1, 1967, Mr. Pederson defaulted on the Pederson contract and continued to be in default until February of 1968, when he was adjudicated a bankrupt in the United States District Court for the District of Minnesota, in Duluth, Minnesota. The notice of the first meeting of creditors was received by the Bank on February 26, 1968, and such notice was also received by Haugen Ford.

Thereafter, on June 13, 1968, the Bank unilaterally reassigned the contract without recourse to Haugen Ford and forwarded a letter with it, stating that Haugen Ford should take some action concerning Pederson's bankruptcy. In addition, the Bank

secured a promissory note from Haugen Ford for the deficiency, and debited Haugen Ford's reserve account with the Bank for $3,731.00. Haugen Ford then filed a claim in the bankruptcy court as a general creditor and received a partial payment in the amount of $1,475.10.

In January of 1973, the Bank instituted an action against Haugen Ford in the Grand Forks County District Court seeking the balance allegedly due it on four other retail installment contracts which had been assigned to the Bank by Haugen Ford. Haugen Ford counterclaimed for damages in the amount of $3,283.90 ($2,255.90, plus interest), allegedly caused by the Bank's failure to file a financing statement with respect to the Pederson contract. The district court ordered judgment for the Bank pursuant to its complaint and dismissed Haugen Ford's counterclaim.

■ On October 23, 1973, Haugen Ford appealed to this court from the judgment of the district court. However, in its written and oral arguments presented to this court, Haugen Ford contests only the validity of that part of the judgment which dismissed its counterclaim. Haugen Ford's appeal from that part of the judgment of the district court which awarded damages to the Bank pursuant to its complaint is therefore deemed abandoned. Moran v. Moran, 200 N.W.2d 263, Syll. ¶ 9 (N.D. 1972).

The sole issue before this court is whether the Bank owed a duty or obligation to Haugen Ford as guarantor of the Pederson contract to perfect the security interest in such contract.

Haugen Ford contends that the district court erred in dismissing its counterclaim because, as a matter of law, Haugen Ford was entitled to damages for the injury caused by the Bank's failure to perfect a security interest in the Pederson automobile. We agree.

In 1967, in order to perfect a security interest in an automobile which was consid-

ered to be consumer goods, as the automobile in the instant case was, the holder of the security interest was required to file a financing statement in the county of the debtor's residence. § 41–09–40, N.D.C.C. (§ 9–401, U.C.C.); § 336.9–401, Minn.Stat. Ann. In the instant case, the debtor's residence was in Beltrami County, Minnesota. Under both North Dakota and Minnesota law, the filing of a security agreement such as the Pederson contract is the equivalent of filing a financing statement. § 41–09–41, N.D.C.C. (§ 9–402, U.C.C.); § 336.9–402, Minn.Stat.Ann. Accordingly, since the security agreement in the instant case could have been filed to perfect the security interest in the Pederson automobile, the question which remains is: whose duty was it to file such security agreement? A perusal of Chapter 41–09, N.D.C.C., which chapter governs the filing of security agreements, indicates that such chapter does not provide or designate which party, that is, the assignor or assignee, of a security agreement has the specific obligation to file such instrument.

This is a case of first impression in this court. A review of the pertinent provisions of the Uniform Commercial Code in effect in the State of Minnesota at the time this litigation arose does not show that there have been any decisions by the Supreme Court of that State with reference to the issue before us in the instant case.

■ The principles of law on which Haugen Ford relies to establish an implied duty on the Bank to file the security agreement are stated in 50 Am.Jur., Suretyship, §§ 109 and 118, as follows:

"§ 109. Generally. A surety is entitled to be subrogated to the benefit of all the securities and means of payment under the creditor's control, and so, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right. . . .

"*§ 118. Failure to Perfect or Record Security.* The collateral security taken by a creditor may require some act on the part of the creditor to make it a valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged to the extent of his loss or injury. . . ."

In 1966, the Supreme Court of Arizona, in D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85, applied the principles of law relied on by Haugen Ford to a factual situation nearly identical to that in the instant case. In the *Jaquays* case, Jaquays & Co. sold and delivered an air compressor to a manufacturing company, pursuant to a conditional sales contract. Subsequent to the execution of the sales contract, Jaquays & Co. assigned all of its right, title, and interest in the contract to the First Security Bank. Jaquays & Co. also executed the following unconditional guaranty, *Jaquays, supra* 419 P.2d at 87:

"The undersigned unconditionally guarantees to the First Security Bank the faithful performance of the above contract, and in connection therewith, consents, without notice, to any extensions or forbearance by assignee, and waives any demand or notice of default."

A second conditional sales contract was subsequently executed and assigned to the First Security Bank with an identical guaranty. Thereafter, the manufacturing company was adjudged a bankrupt. Jaquays & Co. then petitioned the bankruptcy court for repossession of the equipment covered by the sales contracts, but the petition was denied because neither of the sales contracts had been recorded as required by Arizona law. Jaquays & Co. then refused to honor its unconditional guaranty with the First Security Bank and the Bank sued. The trial court granted the Bank's motion for a summary judgment and Jaquays & Co. appealed, contending that the bank had an implied-in-law duty to record the sales contracts.

On appeal, the bank argued in *Jaquays* that, by the terms of the unconditional guaranty, Jaquays & Co. had consented to any forbearance by the bank, including any failure of the bank to pursue any legal right against the purchaser. The Arizona Supreme Court upheld Jaquays & Co.'s contention, and reversed the lower court's decision, saying, *Jaquays, supra* 419 P.2d at 88–89:

"We do not agree with plaintiff's conclusion that an unconditional guarantor, by consenting to 'any extention or forbearance', thereby loses his defense that a subrogation right has been impaired or destroyed by the guarantee's failure to preserve security by recording. The doctrine of subrogation arises not from contract but from principles of equity.

. . .

"If the destruction or impairment of such a right is to be waived by a guarantor, it should only be by the most unequivocal language in the guaranty agreement. The right does not originate in contract, and it cannot lightly be destroyed by contract."

In conclusion, the Arizona Supreme Court, in *Jaquays, supra* 419 P.2d at 89, stated:

"In view of the above we are of the opinion that the plaintiff had an implied-in-law duty to record the sales contracts, that performance of the duty was not waived by the unconditional guaranties executed by defendant, that the defendant was entitled to be released from liability in his guaranties to the extent of his loss caused by the failure to record, and that the trial court erroneously granted plaintiff's motion for summary judgment for the full amount of the balance due on the contracts, plus interest."

A similar result was reached by the Colorado Court of Appeals in Behlen Mfg. Co. v. First National Bank of Englewood, 28 Colo.App. 300, 472 P.2d 703 (1970), which involved an action by guarantor-Behlen against creditor-First National Bank for damage on account of the Bank's failure to record a mortgage and lease assignment which was given as security for a note which had been guaranteed by Behlen. When the maker of the note defaulted, Behlen paid the bank and attempted to recover from the maker of the note, who had since then been adjudged bankrupt. When Behlen could only recover a portion of the amount due, because the mortgage and lease assignment had not been recorded, Behlen sued the bank for its loss. Behlen's complaint was dismissed and it appealed to the Colorado Court of Appeals, which reversed.

The Colorado Court of Appeals first concluded that §§ 109 and 118 of 50 Am. Jur., Suretyship, were applicable to unconditional guaranties, the court stating, in *Behlen, supra* 472 P.2d at 706:

"The above quoted sections of Am.Jur. accurately state the law as to suretyship and this law is equally applicable to an unconditional guaranty. The guarantor has a *right of subrogation to the security* upon payment of the obligation. . . ."

The Colorado Court then relied on *Jaquays, supra*, and concluded that the bank had an obligation to record the mortgage and lease assignment in order to protect the interest of the guarantor.

In a recent case on this subject, the United States Court of Appeals for the District of Columbia adopted the general rule relied on by Haugen Ford (and applied in *Jaquays* and *Behlen, supra*) in Ammerman v. Miller, 159 U.S.App.D.C. 385, 488 F.2d 1285, 1295 (1973), wherein that Court stated:

"The general rule is that if a creditor receives a mortgage, deed of trust, assignment, or similar conveyance of property of the debtor as security for the debt, knows of the guarantor's obligation, and the recording of such conveyance is necessary so as to make it valid against subsequent judgment creditors and purchasers, it is the duty of the creditor to see that the instrument in his hands is properly recorded, and if he fails to act, the guarantor will be discharged to the extent of the loss thereby occasioned. D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85 (1966); First Nat. Bank v. Kittle, 69 W.Va. 171, 71 S.E. 109 (1911); Sullivan v. State, 59 Ark. 47, 26 S.W. 194 (1894); 50 Am.Jur., Suretyship, § 118; Restatement of Security § 132, p. 358 (1941); A. Stearns, Suretyship § 99, p. 142 (4th ed. 1934); 1 G. Brandt, Suretyship and Guaranty, § 505 (3rd ed. 1905). *Cf.* Etelson v. Suburban Trust Company, 263 Md. 376, 283 A.2d 408 (1971)."

See also Piasecki v. Fidelity Corporation of Michigan, 339 Mich. 328, 63 N.W.2d 671 (1954).

 Nevertheless, the Bank contends in the instant case that Haugen Ford, by executing the guaranty provision in the Pederson contract, waived the obligation of the Bank to protect the security.

As we noted earlier, the Arizona Supreme Court, in *Jaquays, supra* 419 P.2d at 89, said:

"If the destruction or impairment of such a right is to be waived by a guarantor, it should only be by the most unequivocal language in the guaranty agreement. The right does not originate in contract, and it cannot lightly be destroyed by contract."

The Colorado Court of Appeals quoted with approval the above language from *Jaquays* in *Behlen, supra*, and held that the language in the guaranty provision of the contract [mortgage and lease assignment] was insufficient to constitute a waiver.

The Bank relies principally on Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp., 243 F.2d 196 (C.A.10th N.M.1957). However, in *Heaston*, the contract of guaranty provided, at page 198, note 1:

"The undersigned waives any notice of the incurring by the Dealer at any time of any of the Liabilities and waives presentment, demand, protest or notice of dishonor, nonpayment or other default with respect to any of the Liabilities. The undersigned grants to the Finance Company full power to modify or change terms of any of the Liabilities, to agree to forbearance with respect thereto, to consent to the substitution or exchange or release of collateral thereto, and extension of time of payment of the Liabilities."

A similar provision is found in the contract in Continental Leasing Corporation v. Lebo, 217 Pa.Super. 356, 272 A.2d 193, 196 (1971).

In all of the cases relied on by the Bank in the instant case to show a waiver by the guarantor, the assignors-guarantors have expressly and unequivocally released their rights in the collateral. On the other hand, there is no such release in the guaranty provision in the instant case.

After a careful study of the cases relied on by the Bank, we believe that those cases are readily distinguishable from the case at bar.

We believe that the rule enunciated in *Jaquays*, and applied in *Behlen* and *Ammerman, supra*, is the more reasonable one.

Since we reverse that part of the judgment dismissing Haugen Ford's counterclaim, we do not deem it necessary to discuss the other contentions urged by Haugen Ford.

Accordingly, we hold that the district court erred, as a matter of law, when it failed to find an implied-in-law duty or obligation on the part of the Bank to perfect the security interest in the Pederson automobile by filing the security agreement.

The judgment dismissing Haugen Ford's counterclaim is therefore reversed and the case is remanded to the district court with instructions that the district court award damages to Haugen Ford in the amount of $2,255.90, pursuant to its counterclaim, as of July 1, 1968, plus interest from July 1, 1968, as a setoff to the damages awarded to the Bank.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and VOGEL, JJ., concur.