The RAMSEY NATIONAL BANK & TRUST COMPANY, Plaintiff/Appellee,

v.

SUBURBAN SALES & SERVICE, INC., OF DEVILS LAKE, North Dakota, Defendant/Appellee,

and

Western Surety Company of Sioux Falls, South Dakota, Defendant/Appellant.

Civ. No. 9086.

Supreme Court of North Dakota.

June 23, 1975.

Rehearing Denied July 11, 1975.

Robert Vaaler, Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for defendant and appellant.

Evan F. Heustis, Haugland & Heustis, Devils Lake, for plaintiff and appellee.

PAULSON, Judge.

Ramsey National Bank & Trust Company [hereinafter "the Bank"], of Devils Lake, obtained a judgment in Ramsey County District Court against Western Surety Company and Suburban Sales & Service, Inc. [hereinafter Suburban], jointly and severally, in the amount of $10,000, plus costs; and against Suburban, individually, in the amount of $17,689.98. Western Surety appeals; Suburban does not.

As a dealer in new and used automobiles, Suburban financed its inventory through the Bank. In its course of dealings with Suburban, the Bank would loan to Suburban the purchase price of an automobile and obtain possession of the title certificate or manufacturer's certificate of origin for the vehicle. The Bank did not note its security interest on the certificate nor did it file a financing statement or security agreement in Ramsey County. It was contemplated by the parties that upon the sale of each such financed car, Suburban would pay to the Bank all or a portion of the sale proceeds in exchange for the title certificate of the particular vehicle sold. The certificate of title then, in the regular course of business, would be transferred to the purchaser.

However, in February 1972 it was discovered that during the years 1970 and 1971 Suburban had sold thirteen vehicles (financed by the Bank) and had retained the entire proceeds from such sales, leaving the Bank retaining only the title certificates to such vehicles and the purchasers in possession of the vehicles for which Suburban was

unable to furnish certificates of title. The purchasers thereafter brought a class action against the Bank to obtain their respective certificates of title, which action resulted in a judgment awarding such certificates of title to them as bona fide purchasers from a dealer in the type of goods sold.

The Bank then commenced this action against Suburban and Western Surety, Suburban's compensated surety, and secured a judgment of $10,000 against Western Surety, which was the amount of the bond limit Western Surety had issued to Suburban.

Western Surety contends on appeal that its obligation as Suburban's surety was exonerated because the Bank failed to adequately protect its security interest:

1. Specifically, that the Bank failed to perfect its security interest in each of the vehicles in question, thus prejudicing the rights of Western Surety as subrogee to the Bank's claim against Suburban; and

2. That the Bank was negligent in failing to discover prior to February 1972 that Suburban was selling Bank-financed vehicles without remitting all or a portion of the proceeds of such sales to the Bank.

We hold that Western Surety is obligated to pay according to the terms of its bond and, accordingly, we affirm the judgment of the district court.

■ In North Dakota, each automobile dealer is required by § 39–22–05, N.D.C.C., to be bonded in the amount of $10,000 before he will be issued a motor vehicle dealer's license. This statutory bond is designed to protect the public in its transactions with motor vehicle dealers and, although § 39–22–05, N.D.C.C., may have been enacted primarily to protect purchasers, its provisions have been held to benefit, as well, financial institutions that loan to dealers the money required to maintain an inventory. State v. General Insurance Company of America, 179 N.W.2d 123 (N.D. 1970).

■ The Bank, in its capacity as creditor of Suburban, is entitled to the protection of § 39–22–05, N.D.C.C. Yet, as one to whose rights Western Surety becomes subrogated upon Western Surety's payment of the amount of the bond, the Bank's entitlement to payment under the bond is not unconditional. In First National Bank in Grand Forks v. Haugen Ford, Inc., 219 N.W.2d 847 (N.D.1974), Haugen Ford assigned a retail installment contract to the First National Bank in Grand Forks. Such assignment contained a provision whereby Haugen Ford guaranteed payment of the amount due under the contract. Neither First National Bank nor Haugen Ford filed a financing statement to perfect the security interest in the automobile which was the subject of the installment contract. The purchaser of the automobile subsequently defaulted and filed for bankruptcy and, thereafter, the First National Bank reassigned the contract to Haugen Ford, stating that Haugen Ford should proceed to collect the debt. Haugen Ford filed a claim in bankruptcy as a general creditor, but received only partial payment of the debt.

■ Thereafter, in a lawsuit commenced against Haugen Ford by the First National Bank, Haugen Ford counterclaimed, alleging that the failure of such bank to perfect the security interest prevented Haugen Ford from collecting the full amount of the debt as a secured creditor. The district court dismissed Haugen Ford's counterclaim and Haugen Ford appealed to this court. On appeal, this court stated, in *Haugen Ford, supra*, 219 N.W.2d at 850:

"The sole issue before this court is whether the Bank owed a duty or obligation to Haugen Ford as guarantor of the Pederson contract to perfect the security interest in such contract."

We held in *Haugen Ford* that there existed an implied-in-law duty on the part of the First National Bank to perfect, and thus protect, its security interest, and that the failure of such bank to do so exonerated Haugen Ford from its duty as guarantor to the extent that such failure to perfect dam-

aged Haugen Ford's ability to collect the debt. In so holding, in *Haugen Ford, supra,* 219 N.W.2d at 852, we quoted with approval the language of Ammerman v. Miller, 159 U.S.App.D.C. 385, 488 F.2d 1285, 1295 (1973):

" 'The general rule is that if a creditor receives a mortgage, deed of trust, assignment, or similar conveyance of property of the debtor as security for the debt, knows of the guarantor's obligation, and the recording of such conveyance is necessary so as to make it valid against subsequent judgment creditors and purchasers, it is the duty of the creditor to see that the instrument in his hands is properly recorded, and if he fails to act, the guarantor will be discharged to the extent of the loss thereby occasioned. D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85 (1966); First Nat. Bank v. Kittle, 69 W.Va. 171, 71 S.E. 109 (1911); Sullivan v. State, 59 Ark. 47, 26 S.W. 194 (1894); 50 Am.Jur., Suretyship, § 118; Restatement of Security § 132, p. 358 (1941); A. Stearns, Suretyship § 99, p. 142 (4th ed. 1934); 1 G. Brandt, Suretyship and Guaranty, § 505 (3rd ed. 1905). *Cf.* Etelson v. Suburban Trust Company, 263 Md. 376, 283 A.2d 408 (1971).' "

And, in *Haugen Ford, supra,* 219 N.W.2d at 851, this court quoted a general statement of the law from 50 Am.Jur., Suretyship, § 118:

" '*§ 118. Failure to Perfect or Record Security.* The collateral security taken by a creditor may require some act on the part of the creditor to make it a valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged to the extent of his loss or injury. . . .' "

■ We find that the rule applied in *Haugen Ford* is applicable to this case as well. The fact that Western Surety is a compensated surety rather than a personal guarantor, as Haugen Ford was, does not require a different principle of law to be applied. We conclude, therefore, that in the instant case the Bank owed a duty to Western Surety—its equitable subrogee—to protect its security interests by perfecting them according to North Dakota law.

Section 41–09–23, N.D.C.C., provides the methods by which security interests are to be perfected. That statute, at the time the operative facts of this case occurred, provided in pertinent part:

"1. A financing statement must be filed to perfect all security interests except the following:

. . . . .

"d. a purchase money security interest in consumer goods; but filing is required for a fixture under section 41–09–34 or for a motor vehicle required to be licensed;

. . . . .

"3. The filing provisions of this chapter do not apply to a security interest in property subject to a statute

. . . . .

"b. of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"4. A security interest in property covered by a statute described in subsection 3 can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official."

The Bank contends that by the terms of subdivision 3 of § 41–09–23, N.D.C.C., perfection of a security interest in a motor vehicle is to be accomplished by compliance with the title registration requirements contained in Chapter 39–05, N.D.C.C. It is further contended by the Bank that its security interests were perfected by the mere

possession of the certificates of title to the automobiles in question. We do not agree with either of the Bank's contentions.

Initially, we do not believe that an automobile dealer's inventory of automobiles is property covered by our title registration statutes. By the terms of § 39–05–05, N.D.C.C., application for a certificate of title for a new automobile is not to be made until the automobile is purchased by a consumer from a dealer. Except as required by § 39–22–09, N.D.C.C., dealers in used motor vehicles are not required to, although they may, obtain certificates of title assigned to them for used cars that come into their possession. Because of this, it is our interpretation of the law that § 41–09–23, N.D.C.C., is intended to apply to automobiles held as inventory by motor vehicle dealers. This interpretation comports with the general interpretation of § 9–302 of the Uniform Commercial Code [§ 41–09–23, N.D.C.C.[1]]. In Anderson, Uniform Commercial Code § 9–302:21 (2d ed. 1971), it is stated:

> "The motor vehicle code, in its provision for the notation of an encumbrance on the title certificate, does not control the manner of perfecting a security interest by a creditor advancing money for the wholesale financing of new cars. If the state motor vehicle law does not require that a dealer in used cars obtain a title certificate for them, the obtaining of the certificate noting the secured party's interest is not necessary to perfect that security interest."

Although we believe that, in 1970 and 1971, a security interest in a motor vehicle was to be perfected under § 41–09–23, even if we were to assume, for the sake of argument, that the title registration statutes governed perfection, the Bank has failed to show that it perfected its interests pursuant to the title registration statutes. No notation of the Bank's interests was made upon the title certificates. It is clear that the Bank did not, in any manner, perfect its security interests in the automobiles it financed.

It is at this point in its argument—having shown that the Bank had a duty to perfect its security interests and that it failed to perform that duty—that Western Surety rested its case. But the law requires more. Haugen Ford and the many authorities cited therein stand for the proposition that a surety is exonerated by a creditor's failure to protect its security interest only to the extent that the surety is actually damaged thereby.

In this regard, it is to be noted that the district court, in its memorandum opinion, found as a fact that "there is no showing that the defendant insurance company has been prejudiced in any way by the actions of the plaintiff". Under Rule 52(a), N.D.R.Civ.P., unless it is shown that this finding is clearly erroneous, it may not be set aside. Western Surety has failed to show the manner in which it was damaged by the action of the Bank. In short, Western Surety has not shown how its status as subrogee to an unsecured creditor rather than to a secured creditor in any way adversely affected its ability to recover its payment of the amount of the bond. Absent a clear showing of actual damage incurred, we will not hold that Western Surety is exonerated from its duty to pay under the terms of its bond.

Western Surety has also contended that the Bank was remiss in preserving its security interest in that the Bank failed to ascertain that Suburban was selling vehi-

---

[1]. Section 41–09–23, N.D.C.C., as amended in 1973, now clearly defines the competing spheres of operation of the U.C.C. in North Dakota and the title registration laws. Subsection 3(b) now reads:

"b. . . . during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this chapter (Part 4) apply to a security interest in that collateral created by him as debtor; . . . "

cles out of trust. The district court found, upon consideration of the evidence of this case, that the Bank exercised reasonable diligence under the circumstances to preserve its security interest. We do not find the district court's finding in this regard to be clearly erroneous. There was evidence showing that the Bank, through its agents, made periodic inspections of Suburban's sales lot. It was also shown that if a particular financed vehicle was not present on the lot, the agent of the Bank would ask the management of Suburban what became of the car. On at least one occasion, after being told that the automobile was being tested by a prospective purchaser, the Bank's agent confirmed this with the prospective purchaser. In the regular course of business this would be a reasonable and sufficient inspection. In this case, it turned out that it was not. It must be remembered that this is the exceptional case—the case of dealer fraud. It is to protect the public in exactly this type of situation that § 39–22–05, N.D.C.C., requires dealers to be bonded. Were we to require that amount of diligence demanded by Western Surety of the Bank, the salutary policy of § 39–22–05, N.D.C.C., would be emasculated. This we will not do. We hold that the Bank exercised reasonable diligence in preserving its security interest.

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.