Lois H. **WOOD**, Plaintiff,

v.

John L. **MANGUM**, Defendant.

No. J–C–85–112.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Sept. 29, 1986.

---

**132**

Robert Branch, Branch & Thompson, Paragould, Ark., for plaintiff.

Bill W. Bristow, Jonesboro, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

This is an action instituted by Lois H. Wood, of Green County, Arkansas, against John L. Mangum, of Clinton, Missouri, to recover the sum of $25,000.00 pursuant to a guaranty agreement executed by Mangum on August 13, 1980, guaranteeing payment of a promissory note dated March 10, 1980, executed by Tank and Tower Erectors, Inc. (Tank) to Lois H. Wood as payee, in the sum of $45,000.00.

The Court holds that because of the affirmative conduct of plaintiff which resulted in the demise of Tank as a corporate entity and prevented Tank from paying the indebtedness, the guarantor, Mangum, is discharged from liability under the written guaranty.[1]

### RELEVANT FACTS

On March 10, 1980, Tank, through its president, Lois H. Wood, plaintiff herein, executed a promissory note payable to Wood in her individual capacity in the sum of $45,000.00 with interest at 10% per annum until paid. At that time, Wood owned approximately 495 shares of Tank's stock with Mangum owning an equal number of shares and one Norma Jean Gray owning approximately ten shares.

On August 13, 1980, Mangum, in consideration of Wood "[extending] the payment schedule for such note and certain management authority ... extended to John L. Mangum in the management of the affairs of Star Cooling Towers, being a division of Tank and Towers Erectors, Inc.", executed a guaranty agreement guaranteeing the $45,000.00 note to Wood *"in the event of a default in the payment of the note"* by Tank. (Emphasis added).

---

1. This proceeding was initially filed in the Circuit Court of Green County, Arkansas, on March 7, 1985, and removed to this Court on April 9, 1985, because of the diversity of citizenship of the parties.

On June 30, 1981, an extension agreement executed by:

"Tank and Tower Erectors, Inc.

By Lois H. Wood—President

Attest: Melba J. Wood—Secretary"

extended payment of the balance due to Wood under the note of March 10, 1980, in the sum of $25,000.00 to "any time after June 30, 1981". Wood did not execute this extension in her individual capacity.

On June 26, 1981, Articles of Incorporation of Cooler Consultants and Erectors, Inc. (Cooler), were filed with the Secretary of State for the State of Arkansas. The nature of the business to be pursued by Cooler was the same as Tank's, namely: "To engage in the business of construction and repair of cooling towers." The registered office of Cooler was Paragould, Arkansas. Tank's principal's office was also Paragould, Arkansas. Cooler was a competitor of Tank.

Wood, while serving as president of Tank, without knowledge of Mangum, participated in the creation of Cooler. After Cooler's incorporation, Wood, without the knowledge and consent of Mangum, served as a consultant to Cooler. Wood submitted her resignation on July 15, 1981, "as a director and officer of Tank and Tower Erector, Inc., effective July 31, 1981."

Tank has defaulted on the payment of the March 10, 1980, note to Wood. Mangum has refused to respond to Wood's demand for payment contending that Wood's "wrongful conduct toward Tank" has discharged and cancelled the indebtedness.

A balance sheet for Tank dated December 31, 1979, discloses that Tank, on that date, possessed assets totaling $252,498.62. This figure represented the following: Cash $67,847.11, accounts receivable $23,-583.01, loans $10,912.73, deferred job costs $106,173.91 and fixed assets, less accumulated depreciation, were valued at $43,-981.86. Tank's liabilities were listed at $150,615.21.

Tank's 1978 fiscal tax return, commencing July 1, 1977, and ending June 30, 1978, reflected gross receipts as $907,857.52, and gross profits as $218,037.19. Tank's 1979 tax return reported gross receipts of $921,-787.59, with a net of $218,641.84.

Tank's 1980 tax return disclosed gross receipts of $704,251.62 and a net of $226,-502.83 resulting in an operating loss of $86,405.21 after considering deductions in the sum of $312,908.04.

Tank's 1981 tax return reported gross receipts of $1,472.00 and after deducting the cost of goods sold in the sum of $3,941.61, Tank reported a gross loss of $1,469.61. Tank's 1982 tax return reported no income for that year.

## DISCUSSION

It is a well recognized rule that a guaranty is a collateral undertaking by one person to answer for payment of a debt of another; and the undertaking of the principal debtor is independent of the promise of the guarantor; and that upon default of the principal, the promise of the guarantor becomes absolute. *First American Nat'l Bank v. Coffey-Clifton*, 276 Ark. 250, 633 S.W.2d 704. However, courts are reluctant to enforce a guaranty agreement where "the guarantee does some act, or is guilty of some [conduct] which prevents the principal from complying with his contract". 38 C.J.S. Guaranty, § 67 at page 1229; 38 Am Jur 2d Guaranty, § 79 at page 1086; *Piasecki, et al v. Fidelity Corp. of Michigan*, 339 Mich. 328, 63 N.W.2d 671. *See also, Ryder Truck Rental, Inc. v. Kramer*, 263 Ark. 169, 563 S.W.2d 451.

Wood concedes that while serving as president and director of Tank she served as a consultant to Cooler, but denies that she diverted business from Tank and that she received no compensation from Cooler for her services "prior to resigning as President of Tank." The Court, however, notes that the law firm that assisted in the organizational phase of Cooler billed Cooler for the following services: "Conference with Lois Wood and Charles Davis concerning organizational plans of corporation [Cooler]...." (See Defendant's Exhibit 1). It is clear that Wood, while a major stockhold-

er and officer of Tank, not only served as a consultant to Cooler, but assumed an active role in establishing Cooler, a competing enterprise, before she tendered her resignation to Tank.

It is plain that Wood was an aggressive entrepreneur and was highly regarded throughout the nation as a proficient contractor in constructing and repairing cooling towers. Primarily through her business prowess, Tank not only became a viable corporate entity in a relatively short period of time from its inception, but was regarded as a leader in the cooling tower business.

The Court is persuaded that Tank's sudden and dramatic reduction in gross receipts from $704,251.62 in 1980 to zero in 1982 is attributable in a large measure to Wood's utilization of her expertise in behalf of Cooler at the expense and detriment of Tank. Significantly, Cooler, within a matter of weeks from its incorporation, became the successful bidder in at least three construction projects in which Tank had submitted bids. These projects were located in Beaumont and Houston, Texas, and aggregated a figure of $25,182.00. It is clear from the evidence that Cooler is currently a viable enterprise while Tank, on the other hand, is defunct.

In *Raines v. Toney*, 228 Ark. 1170, 313 S.W.2d 802 (1958), the Arkansas Supreme Court made the following observation:

It is clear that Sam P. Raines occupied a fiduciary position. He owed a duty to E.E. Raines Company to retain and protect and develop the then existing business opportunities.... He owed a duty to retain, protect and develop the then existing 'agency plants' situated throughout the State of Arkansas and owned by his corporation which were essential to its existence. Moreover, he owed the duty not to separate his personal interest from that of his corporation with references to these property interests while serving or even after he had severed his employment with E.E. Raines Company. He owed a duty not to do anything that might result in injury to E.E. Raines Company or 'deprive it of the profit or advantage which his skill, knowledge and ability might personally bring to it or enable it to realize the reasonable exercise of its power.'' ...

... This duty cannot be renounced at will by the termination of employment. 'It is as sacred and inviolable after as before the expiration of its terms.' ... It is, however, a common occurrence for corporate fiduciaries to resign and form a competing enterprise. Unless restricted by contract, this may be done with complete immunity because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. *They cannot while still corporate fiduciaries set up a competitive enterprise.* (Emphasis supplied)

In *Taylor v. Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983), the Arkansas Supreme Court stated:

The law imposes a high standard of conduct upon an officer or director of a corporation, predicated upon the fact that he had voluntarily accepted a position of trust and has assumed control of the property of others.... Such a person occupies a fiduciary relation to the corporation and may not acquire, in opposition to the corporation, property in which the corporation has an interest or which is essential to its existence. *Certainly, the president of a corporation owes a duty not to do an unfair or fraudulent contract which will result in his private gain at the expense of the corporation.... Such an act would be a breach of the fiduciary capacity of the president.* (Emphasis added)

The Court is persuaded and, accordingly, holds, that Wood's conduct in assisting in the organization of a competitive entity and serving as a consultant to Cooler during her tenure as president, director and a major stockholder of Tank, constituted a breach of the fiduciary duty

she owed to Tank.[2] *Raines v. Toney, supra; Taylor v. Terry, supra.* This circumstance is more distressful when considered in the context of Tank's rapid decline in revenues. Because of Wood's affirmative action, Tank was precluded from meeting its financial obligation to Wood and defaulted in the payment of the March 10, 1980, note to Wood.

Mangum not only sustained injury economically as a stockholder because of the defunct status of Tank, but in his capacity of guarantor, Mangum is foreclosed from asserting any subrogation rights against Tank if enforcement of the guaranty is required. More importantly, Mangum would be unfairly penalized, if compelled to comply with the guaranty agreement, when it is plain that Tank's default is due in material part to Wood's breach of her fiduciary duty to both Tank and Mangum.[3]

Wood argues that Mangum does not have standing to assert breach of fiduciary responsibility as a bar to Wood's action. Any claim for mismanagement, argues Wood, must be brought in the name of the corporation, Tank.

Wood also argues that after Mangum received notice that Wood was serving as consultant to Cooler, a competing entity, Mangum made a payment "pursuant to his Guaranty Agreement on January 2, 1982", and, therefore, Mangum has waived his right to assert breach of fiduciary duty as a defense to Wood's action.

Finally, Wood argues that in actuality the thrust of Mangum's defense to Wood's action is "fraud"; and that under Arkansas law "a claim for or cause of action for fraud must be asserted within three years

from the date the moving party became aware of the fraudulent act." Thus, argues Wood, the statute of limitations precludes Mangum from relying on Wood's conduct in assisting Cooler since Mangum's defense is asserted more than three years after he received notice or should have known about Wood's conduct.

After carefully considering Wood's arguments, the Court is persuaded that these arguments are without merit for the following reasons:

## A. STANDING

■ It is clear that Wood misconceives the thrust of Mangum's defense to her action on the guaranty agreement. Mangum is not seeking to vindicate a right or position that could only be asserted by the corporate entity, Tank. On the contrary, Mangum asserts that Wood's personal and affirmative conduct materially impaired or prevented the principal, Tank, from meeting its obligation and, as a consequence, Mangum has been injured, *i.e.* precluded from asserting subrogation rights, and he has been released or discharged from complying with his guaranty agreement. This right is personal to the guarantor as opposed to the principle.[4] *See, Ryder Truck Rental, Inc. v. Kramer, supra;* 38 Am Jur 2d Guaranty § 79, at page 1086.

## B. WAIVER

The Arkansas Supreme Court in *Ray Dodge, Inc. v. Moore,* 251 Ark. 1036, 479 S.W.2d 518, defined waiver as:

"Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with intent

---

**2.** Melba J. Wood of Paragould, Arkansas, was the incorporator of Cooler, the competitor corporation. Melba J. Wood served as Secretary of Tank during Wood's tenure as President. Wood also resides at Paragould, Arkansas.

**3.** A guarantee is under a duty to avoid doing anything which will prejudice the guarantor's rights and remedies against the principal. 38 C.J.S. Guaranty § 109.

**4.** Wood did not raise the standing issue in her response to Mangum's affirmative defenses set

forth in his answer. It is asserted in her brief. While the Court is of the view that breach of fiduciary duty is personal to Mangum in the factual context of this case, the Court would hold that the asserted defect of party was not properly raised. A defect of party is ordinarily waived if opposing party fails to object and ask that the real party in interest be brought in. *Farm Bureau Mutual Insurance Company of Arkansas, Inc. v. Robinson,* 262 Ark. 850, 562 S.W.2d 53.

that he shall forever be deprived of its benefits. It may occur when one, *with full knowledge of the material facts,* does something which is inconsistent with the right or his intention to rely upon it." (Emphasis added)

 In "scrutinizing impartially" all the evidence relied upon by Wood in asserting waiver, as required under Arkansas law, *Sirmon v. Roberts,* 209 Ark. 586, 191 S.W.2d 824, the Court is not persuaded that Mangum knew all of the material facts regarding Wood's involvement in the creation of Tank, and, in addition, the assistance rendered to Tank as a consultant when the January 2, 1982, payment was made to Wood on the indebtedness. Nor is the Court persuaded that Mangum intentionally condoned Wood's actions and abandoned his right to assert discharge. Moreover, it is not clear whether the payment was made by Tank or Mangum. Significantly, Wood has not demonstrated that she either relied on Mangum's action, assuming that Mangum made the January 2, 1982, payment, or was misled to her injury, or that she changed her position to her damage, or that she paid a consideration for the waiver. *See, Beene v. Green,* 127 Ark. 119, 191 S.W. 915.

### C.  STATUTE OF LIMITATIONS

In *Missouri and North Arkansas Railway Company v. Bridwell,* 178 Ark. 37, 9 S.W.2d 781 (1928), the Arkansas Supreme Court stated:

> If a ... set-off is interposed as a defense merely, and no affirmative relief is asked, and when it grows out of the transaction which is the basis of plaintiff's cause of action, there is no reason why this defense might not be available as long as plaintiff's cause of action exists.

In *Little Rock Crate & Basket Company v. Young,* 284 Ark. 295, 681 S.W.2d 388, the Arkansas Supreme Court in enlarging the right of a party to assert set-off in an action, observed, quoting from the headnote:

[A]ny demand, right or cause of action, regardless of how it may have arisen, may be asserted by way of setoff in any action to the extent of the plaintiff's demand, the defendant may assert a set-off that arose from a different transaction and was barred by limitations when the plaintiff's cause of action accrued.

 It is plain from Mangum's answer that he is asserting his claim as a set-off against Wood's action to the extent of the injury he has sustained including any subrogation rights. He seeks no affirmative relief.

Accordingly, the Court holds that because of Wood's affirmative conduct, Tank was prevented from meeting its obligation to her and, further, if required to comply with the guaranty agreement, Mangum, because of Wood's affirmative action, could not assert his subrogation rights against Tank because of its defunct status. Mangum is entitled to a set-off to the extent of Wood's claim. Thus, Wood is not entitled to any relief and her complaint is dismissed with prejudice.